WESLEY CLARK, ET AL. *v.* GRANVILLE ROBERTS, ET AL.

[Abstract Kentucky Law Reporter, Vol. 7—591.]

**Evidence of Mental Incapacity.**

　　　Where a father eighty years of age, having eight children, conveys nearly the whole of his estate to five of the children, thereby depriving the other children of anything, such unreasonable disposition is evidence of want of mental capacity on the part of the grantor.

APPEAL FROM PULASKI CIRCUIT COURT.

February 2, 1886.

OPINION BY JUDGE PRYOR:

The ancestor of the appellants and the appellees died in December, 1876, at the age of eighty years. Shortly prior to his death, viz., in June, 1874, he conveyed all of his land except about one hundred acres to five of his children (his four sons and one daughter) excluding his other children, three in number, from any interest in his realty.

The one hundred acres of land retained by the intestate is not worth exceeding $200. The land conveyed is worth several thousand dollars. He conveyed to his five children six or seven hundred acres of land, and by so doing has in effect deprived his three children of any interest in his estate. This unusual consequence is assailed by the appellants on the ground of undue influence on the part of the grantees and the want of mental capacity on the part of the grantor.

The unreasonable disposition of the intestate's estate is evidence of a want of mental capacity on the part of the grantor, and would of itself suggest an inquiry on the part of the chancellor as to the motive influencing the execution of that unusual conveyance, and while old age will not authorize the chancellor to annul the conveyance if rational on its face and executed by one having intelligence enough to comprehend and manage his business affairs, still there are such facts in this case as must require a court of equity to grant the relief sought upon the grounds of both mental incapacity and undue influence. The considerations suggested by the appellees for their execution, based upon promises made when some of the appellees were in their infancy and proved by the grantee's witnesses after the lapse of thirty years, connected with a life bond alleged in one of the deeds but not exhibited, are mere subterfuges to avoid the conveyances that in their execution by a feeble and diseased mind have produced greatest inequality in the division of this old man's property.

Life bonds, if any were executed, afford no adequate consideration for upholding such transactions when it appears that the aged grantor could live but a short time and when his own estate was the basis of the support not only of the father but of the sons who were agreeing to maintain him. It is unfortunate for the good faith that is said to have attended the execution of the papers that the four sons without any concert of action should have met

on the same day at the residence of their father, and without any suggestion from them that he should attempt to parcel out his estate between these sons to the exclusion of his daughters. They were on the ground from twelve o'clock on one day until ten the succeeding day with a deputy clerk whose own testimony is sufficient to invalidate their several deeds. The clerk says that while he was there he talked with this old man on subjects other than that of making the deeds, and he formed an opinion as to what his mental condition was. The opinion formed (says their witness) was that his mind was feeble and in some things he thought he was hardly rational. In this condition we find him surrounded by his four sons and executing conveyances that gave to them the bulk of his estate upon considerations that are simply fictitious, and that are to be performed in the future, with a view to relieve the transaction of much importance, which was being done in the absence of his daughters.

There are no witnesses except the grantees themselves, that do not speak of the feeble condition of this old man's mind both before and after the execution of these deeds. His enfeebled intellect was a subject of more than one letter from Granville, and of the beneficence to that absent sister who had been disinherited; and his want of capacity had manifested itself to such an extent before these deeds were made that Granville wrote to his sister that his father was crazy, and from the time of the execution of these deeds until his death his mind was impaired to such an extent as to require him to be watched to prevent his leaving his home.

No disinterested neighbor, associate or friend of the old man has been called upon in this case to speak of the condition of his mind, but the appellees rest their case on their own testimony when it is apparent from the circumstances connected with the execution of the deeds that their presence was influencing an old man, feeble in mind and body, to give them all to the exclusion of their own sister; and that these four brothers were on the ground for twenty-four hours during the preparation of the papers by the draftsman is to say the least of it, unfortunate for the good faith of the transaction.

The advanced age of the grantor, with his mind disordered and feeble, require that these parties claiming under the deed should satisfy the mind of the chancellor as to the validity of the con-

sideration or the good faith of all the parties. The facts of the case present a directly opposite view of the question. The deeds should be cancelled and the parties left to take the estate as if they had never been executed.

Judgment *reversed* and remanded with directions to cancel the conveyances and for proceedings consistent with this opinion.

*Curd & Waddle, for appellants.*

*Morrow & Newell, for appellees.*

